## DIXON IRMAOS & CIA., Ltd., v. MANHATTAN LIGHTERAGE CORPORATION.

### A—16501.

District Court, E. D. New York.

Feb. 20, 1948.

Bailey & Muller, of New York City, (Julius F. Steinbrenner and Gerald J. McKernan, both of New York City, of counsel), for libellant.

Burlingham, Veeder, Clark & Hupper, of New York City (Stanley R. Wright, of New York City, of counsel), for respondent.

BYERS, District Judge.

This cause involves the alleged loss of 89 bales of cotton lightered by the respondent for the account of the libellant, from Pier 17, Staten Island, to alongside the S. S. Kiyosumi Maru at Pier 57, Brooklyn, N. Y., on July 13, 1941. The entire cargo, for present purposes, was 1,837 bales, of which 1,748 concededly were duly delivered.

The dispute turns upon the question of whether a correct tally was made in the course of the discharge of the bales from the respondent's lighter Mayfair to the ship.

For the Mayfair, the testimony of her captain and acting mate is that the entire 1,837 bales were so discharged by use of the ship's tackle (three booms) into two adjoining hatches.

The libellant relies upon:

(a) Receipts issued for the ship, which disclose the shortage claimed.

(b) The binding effect thereof on the respondent according to the theory that an element of its contract of carriage was to procure receipts from the ship; and while it failed to do that, such receipts were in fact issued, and their terms constitute proof of the shortage.

As to this, the case does not turn upon the question of whether the engagement of the respondent was to include procuring receipts, and if it did, I should hold that the proof had failed in that respect. It is unnecessary to discuss that subject, however, because the precise question is whether under the proof it can be said that the Mayfair is shown to have failed to transport and deliver the total of 1,837 bales.

The receipts at best are evidence that a shortage was claimed, not that such in fact existed. Whether that evidence is sufficient to establish the asserted deficiency in delivery, is not governed by a consideration of whose duty it was to procure the receipts. They must be accepted or rejected according to their capacity to persuade.

Since they were based upon a tally on the ship, it is really the tally which is to be tested for accuracy, and it was clearly at

fault in two respects: On the night of July 13, 1941, the shortage was announced to be 95 bales. That was recanted on the following morning, but the process leading to correction has not been disclosed, nor could it be after the lapse of about 6½ years.

Later, it is stipulated, 42 of the alleged missing bales were discovered at out-turn in an unnamed Japanese port. Thus the amended tally was obviously 42/89 incorrect.

The record is silent as to the termination of the ship's homeward voyage to Japan, and therefore of its final discharge of cargo. The reason for the absence of all pertinent records is obvious.

Since the tally as reflected in the receipts is thus shown to have been over 47% inaccurate, it cannot be accepted as more persuasive than the testimony of the lighter captain who had not been in respondent's employ for over a year prior to the trial, and the man who was acting as mate on this interborough trip, and who never was permanently so engaged.

These reflections are not disturbed by considering the testimony of Otto who did the hiring of respondent, concerning his later correspondence in behalf of his principals. There is no question that a claim was promptly made, but since the ship cleared on July 14, 1941, and this was a Sunday afternoon and evening job at a time when all possible efforts were being made to hurry departure, it is no cause for wonder that something less than diligence was displayed in ferreting out the incidents of the tally which was made from a post between hatches by a stevedore employed by the ship.

As a practical matter, reliance was had upon the expected developments at out-turn to disprove the accuracy of the count made on the ship.

As has been stated, that course was vindicated as to 42 of the 89 bales, which seems to me to justify a preference for the affirmative first-hand testimony of the men who saw the bales leave the lighter, to the contents of the receipts which reflected a palpably inaccurate tally to the extent indicated.

Since the only issue in the case is one of fact as to whether or not the Mayfair discharged the said 1,837 bales of cotton to the ship in question on July 13, 1941, it seems unnecessary to prolong the discussion. The Mayfair was a bailee and has gone forward with sufficient proof to justify a decree in favor of the respondent, with costs, and such is the decision.

If itemized findings and a conclusion are desired, they may be settled with the decree.